AF Approval *TLK for NMA*                      Chief Approval *DJM*

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO.  6:24-cr-261-CEM-LHP

ALAN W. FILION
    a/k/a "Nazgul Swattings,"
    a/k/a "Torswats V3,"
    a/k/a "Third Reich of Kiwiswats,"
    a/k/a "The Table Swats," and
    a/k/a "Torswats"

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B.

Handberg, United States Attorney for the Middle District of Florida, and the

defendant, Alan W. Filion, and the attorney for the defendant, Dan Eckhart, Esq.,

mutually agree as follows:

A.    **Particularized Terms**

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One through Four

of the Information.  Counts One through Four charge the defendant with Interstate

Transmission of Threats to Injure, in violation of 18 U.S.C. § 875(c).

2.    Maximum Penalties

Each of Counts One through Four carries a maximum sentence of five

years' imprisonment, a fine of $250,000.00, a term of supervised release of not more

Defendant's Initials

than three years, and a special assessment of $100 per felony count. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.    <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One through Four are:

<u>First</u>:    The defendant knowingly sent a message in interstate or foreign commerce containing a true threat to injure the person of another; and

<u>Second</u>:  The defendant sent the message with the intent to communicate a true threat of violence or with the recklessness as to whether it would be viewed as a true threat of violence.

4.    <u>Indictment Waiver</u>

The defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.    <u>Waiver of Venue</u>

The defendant hereby waives any and all legal challenges based upon venue, pursuant to Federal Rule of Criminal Procedure 18, the Sixth Amendment, or otherwise, to the prosecution in this district of the offenses charged in Counts Two, Three, and Four of the Information, which offenses were committed in the Central

Defendant's Initials       2

District of California, the Northern District of Florida, the Western District of Washington, and the Western District of Texas. Specifically, the defendant waives the right to be prosecuted for the offense conduct charged in Counts Two, Three, and Four in the districts where the offenses were committed. The defendant also agrees that all his charges may be resolved through a plea of guilty in the Middle District of Florida, as anticipated above in paragraph A.1. In waiving venue, the defendant specifically acknowledges that he has consulted with his attorney and is waiving this right because it is in the defendant's interest, after reasoned reflection, to do so.

6. <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida, the United States Attorney's Office for the Western District of Washington, the United States Attorney's Office for the Central District of California, the United States Attorney's Office for the Western District of Texas, the United States Attorney's Office for the District of Columbia, and the United States Department of Justice National Security Division, Counterterrorism Section (the "Offices"), agree not to charge the defendant with committing any other federal criminal offenses known to the Offices at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

7. <u>Mandatory Restitution to Victims of Offenses of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) and (b), the defendant agrees to make full restitution to each of the victims associated with the offenses identified in Counts One through Four.

Defendant's Initials _____                    3

8.    Discretionary Restitution to Persons or Entities
      Other than the Victims of the Offenses of Conviction

Pursuant to 18 U.S.C. § 3663(a) and (b), the defendant agrees to make restitution to persons and entities who are victims of, or who were significantly harmed by, the defendant's other criminal conduct, which is known to the United States at the time of the execution of this agreement and related to the conduct giving rise to this plea agreement.

9.    Other Measures and Services Afforded to
      Those Harmed by The Defendant's Criminal Conduct

The defendant further understands and agrees that those persons, as described above in paragraph 8, who were directly harmed by the defendant's other criminal conduct, will be provided with reasonable notice of public court proceedings, be afforded the opportunity to reasonably confer with the United States, and be afforded the opportunity to be heard at the defendant's sentencing, pursuant to 18 U.S.C. § 3661.

10.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from

Defendant's Initials _____        4

the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

11.   <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials                     5

12. <u>Cooperation - Substantial Assistance to be Considered</u>

The defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests

Defendant's Initials _____                    6

solely with the United States Attorney for the Middle District of Florida, and the

defendant agrees that defendant cannot and will not challenge that determination,

whether by appeal, collateral attack, or otherwise.

13.     Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-

incriminating information which the defendant may provide during the course of

defendant's cooperation and pursuant to this agreement shall be used in determining

the applicable sentencing guideline range, subject to the restrictions and limitations

set forth in USSG §1B1.8(b).

14.     Cooperation - Responsibilities of Parties

a.     The government will make known to the Court and other

relevant authorities the nature and extent of defendant's cooperation and any other

mitigating circumstances indicative of the defendant's rehabilitative intent by

assuming the fundamental civic duty of reporting crime.  However, the defendant

understands that the government can make no representation that the Court will

impose a lesser sentence solely on account of, or in consideration of, such

cooperation.

b.     It is understood that should the defendant knowingly provide

incomplete or untruthful testimony, statements, or information pursuant to this

agreement, or should the defendant falsely implicate or incriminate any person, or

should the defendant fail to voluntarily and unreservedly disclose and provide full,

Defendant's Initials                     7

complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

Defendant's Initials _____                    8

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

15.     Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural

Defendant's Initials                     9

challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

Defendant's Initials ___AWP___          10

The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be

Defendant's Initials ___AWT___                    11

binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

16.    <u>Abandonment of Property - Computer Equipment</u>

The United States of America and defendant hereby agree that any computer equipment as defined in 18 U.S.C. § 2256, seized from the defendant and currently in the custody and/or control of the Federal Bureau of Investigation or other appropriate agency, were properly seized and are subject to forfeiture to the government according to 18 U.S.C. §§ 2253 or 2254, and/or that the computer equipment and peripherals constitute evidence, contraband, or fruits of the crime for which he has pled guilty.  As such, defendant hereby relinquishes all claim, title and interest he has in the computer equipment and peripherals to the United States of America with the understanding and consent that the Court, upon approval of this agreement, hereby directs the Federal Bureau of Investigation, or other appropriate agency, to cause the computer equipment described above to be destroyed forthwith without further obligation or duty whatsoever owing to defendant or any other person.

As part of the plea agreement in this case, defendant hereby states under penalty of perjury that he is the sole and rightful owner of the property, and that defendant hereby voluntarily abandons all right and claim to and consents to the destruction of:

White iPhone with pink case

Samsung Galaxy IMEI: 35186304595248

Defendant's Initials _____    12

Dell Inspiron 3020 Service Tag 5Z2GDZ3

Dell Intel Core i7 Tower with power cable

Samsung tablet in black case

Seagate external hard drive with power cord

Computer tower with power cable

HP HDX Premium Series Laptop

Samsung Galaxy S5 in white case

HP Laptop "#6042 William Filion" Sticker

Black Samsung

Samsung cellphone in see-through yellow case

Legion Laptop Y545, Model:81Q6, SN: PF1XG1PT with Power supply

**B.**   **Standard Terms and Conditions**

1.   Restitution. Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment

Defendant's Initials _AWF_                    13

plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.

The defendant understands that this agreement imposes no limitation as to fine.

2.   Supervised Release

The defendant understands that the offense to which he is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if he should violate the conditions of release, he would be subject to a further term of imprisonment.

3.   Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.   Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information,

Defendant's Initials                     14

including the totality of the defendant's criminal activities, if any, not limited to the counts to which the defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the

Defendant's Initials __AWF__                    15

purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.  <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. The defendant further understands and acknowledges that any discussions between the defendant or the defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, the defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials _AF_                    16

7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    <u>Department of Justice Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida; the Office of the United States Attorney for the Western District of Washington; the Office of the United States Attorney for the Central District of California; and the Counterterrorism Section of the Department of Justice and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _____                    17

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   Voluntariness

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges his understanding of the nature of the offense or offenses to which he is pleading guilty and the elements thereof, including the penalties provided by law, and his complete satisfaction with the representation and advice received from his undersigned counsel (if any).  The defendant also understands that he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in his defense; but, by pleading guilty, he waives or gives up those rights and there will be no trial.  The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded, and if the defendant answers those questions under

Defendant's Initials _A./F_                       18

oath, on the record, and in the presence of counsel (if any), his answers may later be used against him in a prosecution for perjury or false statement. The defendant also understands that he will be adjudicated guilty of the offenses to which he has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

The defendant is pleading guilty because he is in fact guilty. The defendant certifies that he does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this **23** day of **AUGUST** 2024.

ROGER B. HANDBERG
United States Attorney

_____
Alan W. Filion
Defendant

_____
Cherie L. Krigsman
Assistant United States Attorney
Deputy Chief, National Security Section

_____
Dan Eckhart, Esq.
Attorney for Defendant

for _____
Daniel Marcet
Assistant United States Attorney
Chief, National Security Section

_____
David Rigney, Esq.
Attorney for Defendant

_____
Kara Wick
Assistant United States Attorney

Defendant's Initials _____        20

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                             CASE NO.   6:24-cr-261-CEM-LHP

ALAN W. FILION
    a/k/a "Nazgul Swattings,"
    a/k/a "Torswats V3,"
    a/k/a "Third Reich of Kiwiswats,"
    a/k/a "The Table Swats,"
    a/k/a "Angmar," and
    a/k/a "Torswats"

## PERSONALIZATION OF ELEMENTS

For Counts One, Two, and Four:

   First:      Did you knowingly send a message in interstate commerce
               containing a true threat to injure the person of another?

   Second:     Did you send the message with the intent to communicate a
               true threat of violence?


   A "true threat" is a serious threat—not idle talk, a careless remark, or
something said jokingly—that is made under circumstances that would place a
reasonable person in fear of being injured or in fear of another person being injured.

For Count Three:

   First:      Did you knowingly send a message in interstate commerce
               containing a true threat to injure the person of another?

   Second:     Did you send the message with the intent to communicate a
               true threat of violence?

Defendant's Initials  *AWF*

A "true threat" is a serious threat—not idle talk, a careless remark, or something said jokingly—that is made under circumstances that would place a reasonable person in fear of being injured or in fear of another person being injured.

In transmitting the message containing a threat to injure the person of another, did you intentionally select members of the LGBTQ community as the objects of your threat based on their actual or perceived sexual orientation?

Defendant's Initials  *AWF*                    2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:24-cr-261-CEM-LHP

ALAN W. FILION
    a/k/a "Nazgul Swattings,"
    a/k/a "Torswats V3,"
    a/k/a "Third Reich of Kiwiswats,"
    a/k/a "The Table Swats,"
    a/k/a "Angmar," and
    a/k/a "Torswats"

## FACTUAL BASIS

### *Summary of Defendant's Criminal Conduct*

From approximately August 2022 to January 2024, the defendant, Alan W. Filion, made over 375 swatting calls from the Lancaster, California, area, including calls in which he claimed to have planted bombs in the targeted locations or threatened to detonate bombs and/or conduct mass shootings at those locations.  He targeted religious institutions, high schools, colleges and universities, government officials, and numerous individuals across the United States. He placed these calls using instrumentalities of interstate commerce, including a Voice over Internet Protocol (VoIP) application to place phone calls and internet-based social media platforms to stream the calls and advertise his swatting-for-a-fee services.

Defendant's Initials _AWF_

The defendant became a serial swatter for both profit and recreation. He claimed in a January 19, 2023, online post that his "first" swatting was like "2 to 3 years ago" and that "6-9 months ago [he] decided to turn it into a business. . ." On various dates from December 2022 through approximately January 2024, the defendant placed posts on several social-media channels advertising his services and fee structure. For example, on January 20, 2023, the defendant posted the following:

> Prices$40-Gas leak/Fire for EMS/Fire/Gas Leak [$35 for returning customers}, $50 for a major police response to the house [$40 for returning customers]; $75 for a bomb threat/mass shooting threat (they will shut down the school or public location for a day) [$60 for returning customers]. All swats will be done ASAP or present time.

He added a post on January 7, 2023, that he was "currently doing UK US and Canada."

The defendant also posted several audio recordings on one of his social media channels, and the posts containing call recordings were frequently captioned with claims of responsibility for the calls, such as "This is the one that I did." On January 30, 2023, he posted that he "used to do swattings for the power trip" but that now he did them "for money and the power trip." The defendant intended his calls to cause large-scale deployment of police and emergency-services units to the targeted locations. During these calls, the defendant provided information to law-enforcement and emergency-services agencies that he knew to be false, such as false names, false claims that he and others had placed explosives in particular locations, false claims that he and others possessed dangerous weapons, including firearms and explosives,

Defendant's Initials: A W F                        2

and false claims that he and/or other individuals had committed, or intended to imminently commit, violent crimes.

During the time that dispatchers spent on the phone with the defendant, they were unavailable to respond to other emergencies. Additionally, in response to many of the defendant's calls, armed law-enforcement officers were dispatched to the targeted addresses, and they likewise were made unavailable to respond to other emergencies. In some instances, armed law-enforcement officers approached and entered a targeted residence with their weapons drawn and detained individuals who occupied the residence. Indeed, the defendant claimed in a post on January 20, 2023, that when he swats someone, he "usually get[s] the cops to drag the victim and their families out of the house cuff them and search the house for dead bodies."

The defendant made numerous posts on his channels revealing that he knew that it was illegal to make swatting calls and bomb threats. For example, on January 25, 2023, the defendant posted on a social-media channel that:

> Cybercrimes are easy to get away with if done right...It's either a 0% or 100% chance of getting caught assuming you dont brag about it[.]

A month later, on February 24, 2023, the defendant posted that if he were arrested he would be charged with "150 counts of False Emergency Reports and 23 counts of Terrorism (for swatting government officials and bomb threating schools)[.]" Several weeks after that, on March 16, he posted: "I think I'm gonna get 2 years in prison I live in a leniant [sic] state [.]" And on March 18, 2023, he posted that "[a]ctually in some states bomb threats to schools are counted as terrorism[.] So I'm a terrorist."

Defendant's Initials _____                    3

The defendant utilized various methods to obscure his identity and evade detection by law enforcement. He assumed numerous identities to obtain social media and email accounts, and he drew upon a wide variety of display names and usernames in online platforms. In addition to using numerous VoIP accounts, in some cases he also deployed text-to-speech programs or other means to disguise his voice. The defendant also obtained internet services through a Virtual Private Network hosted in a foreign country. He deleted the content of his social media accounts on several occasions when it appeared that some aspect of his identity or operation might have been compromised, and he created and operated several different social media channels.

Between September 23, 2022, and December 7, 2022, the defendant made nine "self-swatting" calls against his own residence in Lancaster, California, to test his methods and evade detection. He made numerous posts on his channels about these self-swats, including the following:

| | |
|---|---|
| 2/24/23 | "I actually swatted myself with my method." |
| 2/25/23 | "I swatted myself like 3 times to test my methods. It was hard keeping a straight face." |
| 2/25/23 | "When I swatted myself the cops' extreme reaction Was due to my special scenario." |
| 3/10/23 | "I swatted myself. How would I know my methods work otherwise. Swatting my neighbor means I'm in suspicion. But nobody would ever dare swat himself, right?" |

On July 15, 2023, the FBI searched the defendant's residence in Lancaster, California, pursuant to a court-authorized search warrant. While the search was

Defendant's Initials _____                    4

underway, the defendant and his father agreed to a voluntary, non-custodial interview. The defendant falsely said that he did not know why his house was being searched and that he felt that he was being targeted by envious classmates because he had graduated early from high school. The agents asked the defendant about his interest in a specific town in Washington, mentioning the swatting and bomb threats made to a local high school there, and the defendant falsely replied that he did not understand what the agents were talking about and that he did not know anything about it. The defendant and his father mentioned that they had been swatted themselves, and when agents explained to the defendant's father that the defendant had swatted his own house, the defendant falsely denied any involvement with swatting calls and swatting himself. The interview ended shortly thereafter.

The defendant continued his swatting activity until early January 2024. He was arrested and taken into custody on January 18, 2024, on Florida state charges arising from a threat he made to a religious institution in Sanford, Florida in May 2023 (Count One).

<strong><em><u>Specific Threats and Swatting Calls</u></em></strong>

### <em><u>Live-Streamer Swatting in Early October 2022, Dallas, Texas</u></em>

On October 2, 2022, the defendant called an emergency number in the Dallas, Texas area and falsely identified himself as Victim-1 and gave the dispatcher Victim-1's address. The defendant said that he had shot his girlfriend at the residence. Officers responded to that address.

Defendant's Initials _____          5

At the same time, the defendant posted a video on one of his social-media channels showing Victim-1, who was live-streaming himself playing a video game. The person left his desk, and shortly thereafter Dallas Police Department officers could be seen entering and securing the room.

### *Public High Schools in Washington*

In October and November 2022, the defendant made eight threats to bomb, shoot, or otherwise conduct violence at a public high school in Skagit County, Washington, High School Victim-1, which is in the Western District of Washington (Count Three). In some of these threats, the defendant falsely identified Victim-2, a 17-year-old student at the high school, as the perpetrator of some of the violent acts.

For example, in the early evening of October 10, 2022, the defendant left the following voicemail at the high school, using a digitized voice:

> My name is [Victim-2] and I'm using text to speech to hide my identity. Tomorrow, October 11, 2022, I am going to commit a school shooting with my AR-15 and Glock. I will kill as many kids as I can and then I will shoot myself. I have pipe bombs that I have placed in the bathrooms, ceiling tiles, and trashcans all around the school that are set to detonate right before class starts, killing everybody and collapsing the roof. I am doing this because I am sick and tired of all the f*****s in my school.[1] I want to kill all the f*****s because they are disgusting and degenerate. You sick God-hating infidels, you are going to pay. May Allah praise my actions.

Law enforcement officers, including a bomb squad, responded to the high school. Additional patrols were added to patrol the campus overnight.

---

[1] The term redacted herein is a derogatory term for homosexuals.

Defendant's Initials _____                    6

In this threat, and others, the defendant singled out members of the LGBTQ community as the objects of his threats based on their actual or perceived sexual orientation.

Early on the morning of October 12, 2022, the defendant called the high school again, reporting this time that he had placed five pipe bombs under various vehicles in the parking lot and in several classrooms. He claimed to also have an "illegally modified" AR-15 with body armor. Law enforcement responded and checked the cars that were parked there as well as the exterior and interior of the school buildings. School administrators delayed the start of school by two hours.

On October 13, 2022, the defendant posted the following on a social-media channel:

> My name is [Victim-2]. 2 days ago, I called in a fake mass shooting threat to [the public high school] so I could get you pigs to search the school and declare an "all clear" so you would not be prepared for when the real school shooting comes. Now, it is too late for you to stop me. I have an illegally modified fully auto AR-15 and Glock with Level IV body armor and I am right outside the school gates ready to shoot up your f*****-infested school. I have pipe bombs on my body that I will use as grenades, I will kill all of the f****s that I see and also some of the f** enablers like you cops. In addition, I have placed 5 pipe bombs under the cars of various school administrators and 6 in multiple classrooms. They are set to detonate a minute after class starts. Afterwards, I will walk in and shoot everyone I see. Did you get the message? Yes. [The Public High School]. Goodbye.

Mid-day on October 14, 2022, a Friday, the defendant, again using a digitized voice, called a crisis hotline and said that he had stolen his father's Glock and was in a bathroom at the public high school. He advised that he had just come out as

Defendant's Initials _____                7

transgender to a friend who had mocked him. He said that he was ready to take out the people who had bullied him. He then said that this was his last call, and he asked that the crisis hotline employee tell his parents that he loved them.

Law enforcement cleared and secured the campus in response to this threat.

In the early morning hours of November 9, 2022, the defendant sent an electronic message to a Suicide Prevention Line in Skagit County and falsely identified himself as "Clay." He said that he was going to "shoot up the school" when it opened. The defendant said that he had an AR-15 with a bump stock, body armor, and grenades, and that his primary targets would be bullies, the principals, and other staff. Several hours later, the defendant again contacted the Suicide Prevention Line via electronic message, falsely identified himself as "Victim-2"- and reported that he was in the parking lot with an AR-15 and planned to shoot up the school.

The defendant continued his threats against this public high school in the Spring of 2023. On April 25, 2023, he called the local police department and falsely reported that another individual, Victim-3, who he said had graduated from the school the year prior, was going to place pipe bombs in the high school cafeteria at 4 a.m. the following morning as retaliation for being bullied.  On April 26, 2023, he called the local police department, falsely identified himself as Victim-4 and demanded $1000 in Monero crypto currency. He said that he planned to swat New York City and Seattle next. During a subsequent call that same day, the defendant

Defendant's Initials _____                    8

told the police detective that he swatted for "fun" and for "political reasons" because he disliked the United States. He claimed to have swatted Chicago, Florida, Phoenix, Dallas, Salem, and the U.S. Capitol Police. He further explained that people pay him to swat specific places or individuals, and that he was raising money to purchase more AR-15s, ammunition, vests, and ammonium nitrate for an attack he planned to conduct on a business location in New York.

The defendant made at least twenty threatening calls to *other* public high schools across Washington on May 10 and 11, 2023. In each call, he said that he was going to commit a mass shooting in the school and/or that he had planted bombs there. On several of the calls he also said that he was going to kill police officers if they responded. He falsely identified himself as Victim-4, Victim-5, or Victim-6 in four of the calls. He ended many of these calls with the sound of automatic gun fire. Many of the communities threatened on May 10 and 11 sent law-enforcement and emergency-response personnel to the high schools, and the schools were cleared, evacuated and/or locked down.

On November 6, 2023, the defendant called an emergency line in Gray's Harbor County, Washington to falsely report that a "friend" had placed pipe bombs at a local junior/senior high school there [High School Victim-2]. The defendant told the dispatcher that his "friend" would commit a mass shooting with an AR-15 after detonating the bombs. The school was evacuated.

Defendant's Initials _____                    9

### *Iowa High Schools*

From February 6 through 8, 2023, the defendant made a series of threatening calls to locations in Iowa. On February 6, he reported that he had "pipe bombs in a backpack and an AR-15," and he threatened a bombing and mass shooting at a public high school [High School Victim-3] in Story County, Iowa. That same day, the defendant called the Dubuque County Emergency Communications Center and reported that he had placed explosives at a high school in that county. The following day, the defendant threatened to conduct a mass shooting at the high school in Dubuque County, [High School Victim-4] telling the dispatcher that he would "shoot up the school" and "kill everyone." On February 8, the defendant made a 911 call in Dubuque, claiming to have harmed his girlfriend and threatening to kill himself. In that call, he identified himself as Victim-7, a student at the local high school.

On March 6, 2023, the defendant posted the following on one of his social-media channels: "I will commit a mass shooting at [High School Victim-4]."

The defendant was paid to make at least one of these threats by another individual residing in Dubuque. Police in Dubuque investigated this swatting incident and arrested the person who had paid the defendant.

In a subsequent online chat in June 2023 with another individual, the defendant wrote: "To be honest I feel bad for that one customer who's in jail for bragging about buying from me to his friends." He followed this with: "NEVER FORGET [HIGH SCHOOL VICTIM-4]" and "I will avenge you brother."

Defendant's Initials AWf                          10

### *The Florida Series of Threats*

On March 19, 2023, the defendant made threatening calls targeting a business in Deland, Florida, Business Victim-1, and the residence of the business's owner, Victim-8, in Bradenton, Florida. Both locations are in the Middle District of Florida. The defendant called an emergency number in Volusia County, and he left a voicemail at the business. In those calls, he threatened to bomb the business and assassinate the owner of the business at his residence. In the call to Volusia County, he falsely reported that he was a police academy student and that he was committing the threatened acts in the name of a local public official, Official Victim-2. In the voicemail he left at the business, he falsely claimed that he was a "vigilante public servant" and he referred to the same local public official.

The Deland business that the defendant targeted was located in a building that also housed several apartments. When deputies responded to this location, they evacuated several people from an apartment. A bomb-detection unit also deployed to clear the area and ensure the safety of the community.

On May 12, 2023, the defendant made a series of threatening calls to several religious institutions in the Middle District of Florida.

At about 1 p.m. that day, the defendant called the Seminole County Sheriff's Office Communication Center to report that he was at a religious institution, Religious Institution Victim-1, in Sanford, Florida, in the Middle District of Florida, and that he planned to commit a mass shooting in the name of Satan (Count One). He said that he had an illegally modified AR-15, a Glock-17, pipe bombs and

Defendant's Initials ____                    11

Molotov cocktails, and that he was "walking in now" and was "going to kill everyone [he] saw." At the end of the call, sounds of muffled gunfire could be heard. The defendant used VoIP to make the call. When law enforcement responded to the religious institution, they found a woman and two children at the entrance to the building and evacuated them from the area. Law enforcement then formed a perimeter and cleared the building and the area surrounding it.

At around 1:24 p.m, the defendant called a non-emergency line in Hillsborough County, Florida, also in the Middle District of Florida, and falsely reported that he intended to "shoot up" a local religious institution there, Religious Institution Victim-2. He provided the address of the targeted location, and he told the dispatcher that he had an AR-15 and Level 4 body armor and that he was going to commit a terrorist act.

Shortly thereafter, at about 1:45 p.m. on May 12, the defendant called Volusia County dispatch to report that a C4 pipe bomb would be detonated in 15 minutes at a religious institution in Daytona Beach, Religious Institution Victim-3, also in the Middle District of Florida. The defendant stated that his motive for the bombing was connected to the same local government official named in the March 19 threats to the Deland business.

### *Threats against HBCUs*

In May 2023, the defendant made numerous threatening calls to Historically Black Colleges and Universities (HBCUs) across the nation, including those discussed below.

Defendant's Initials _AMF_                    12

At about 12:20 p.m. on May 15, 2023, the defendant called the non-emergency dispatch number for a local police department in the Western District of Texas and claimed to have placed 40 pipe bombs around the campus of a HBCU, University Victim-2. The defendant falsely identified himself as Victim-5. The defendant said that he had placed the bombs earlier that morning when he was high on drugs, that he wanted the "cops" to be there, and that when he saw the cops, he was going to detonate the bombs and kill them and all the students. He then said that the bombs were timed to detonate in about one hour.

On the morning of May 16, 2023, the defendant called university police for an HBCU in the Southern District of Texas, University Victim-3 and reported that he had placed 22 pipe bombs in the ceilings and trash cans on the campus. He falsely identified himself as Victim-4, said that he had placed about 6 of the bombs in the ceiling and that the bombs would go off at about 12:30 to 12:45 p.m. He said that he was high on a psychedelic drug and that Satan had told him to kill the "Saturn-worshippers."

Also on May 16, 2023, the defendant called and made bomb threats to an HBCU and a community college in Mississippi, University Victim-5 and -6. In these calls, he falsely identified himself as Victim -5.

At about 12:52 p.m. on the morning of May 18, 2023, the defendant called an HBCU in the Northern District of Florida, University Victim-1, and stated that he had planted bombs in campus housing (Count Two).  He said that the bombs were located in the walls and ceilings of campus housing and that they would detonate in

Defendant's Initials _____          13

about an hour. The defendant also said that the university was full of Saturn-worshippers. The defendant called the HBCU using VoIP and did not provide a name.  Law enforcement responded, and campus buildings were evacuated.

### *Government Officials*

From June 30, 2023, to July 10, 2023, the defendant made swatting and threat calls targeting eight federal officials or their family members, and one federal building. One of these officials was a member of the United States Congress, several others were agency heads, and others were high-ranking federal law-enforcement officers located in Oklahoma, Texas, and Pennsylvania (Official Victims-3 through -10).

For example, on June 30, 2023, the defendant called a local West Virginia police emergency response number and said that he had placed three dozen pipe bombs all around a federal facility here. He explained, "I'm doing this because I hate the [the federal agency]." He said that the bombs were going to detonate in 30 minutes and that he was going to "blow up the fucking building."

Local officers responded to the facility and a lockdown and evacuation of the facility were conducted.

On July 5, 2023, the defendant called an emergency number in the Atlanta area and falsely claimed that he had killed his "landlord because he was going to evict me." He gave the dispatcher an address belonging to the head of a federal agency, Official Victim-3, and falsely identified himself as that federal official.  He further said that he had an AR-15 and was going to kill himself.

Defendant's Initials AW/F                    14

Several days later, on the afternoon of July 9, 2023, the defendant posted on one of his online channels that "the First stage of the Grand Offensive is tonight. Swat teams will be dispatched." Later that evening, he posted that "bad weather" had delayed the Grand Offensive by one day," and then he specifically referred to a Texas office of a federal law-enforcement agency, and said, "I'm watching you."

Early the next morning, on July 10, 2023, at about 2:45 a.m., the defendant called a local police department in the Western District of Texas and said that he had killed his mother, that he had shot her with an AR-15, and that "her brains exploded on the walls behind her." He falsely identified himself as Official Victim-1, a senior federal law-enforcement agent who was serving in the same agency that the defendant had mentioned in his post the day before. The defendant gave the dispatcher Official Victim-1's address, and he said that he couldn't handle going to prison and that he was going to kill himself. He asked the dispatcher, "are you going to send the cops?" Seconds later, he said, "if you send the cops I'm going to kill them." (Count Four)

The local police and fire departments responded, sending numerous personnel to Official Victim-1's home in the early morning hours. In performing surveillance and due diligence, one of the officers interviewed a neighbor of Official Victim-1, who identified Official Victim-1 as a federal law-enforcement agent. Official Victim-1 was home and invited a senior police officer to come inside his residence to confirm that no homicide had taken place.

Defendant's Initials  ̲A̲W̲  15

### *December-January 2023-2024 Series of Calls*

On or about November 29, 2023, the defendant posted the following on one of his social media channels:

> I will be resuming normal operations on Christmas—Family
> Man vs Cybercriminal
> You can still order from me, I will still do your order, but I
> am working on a massive project.

Then, beginning in late December 2023 and continuing through January 2024, law-enforcement agencies across the country experienced a surge in "swatting" and fictitious bomb threats. While some of these calls targeted private citizens chosen seemingly at random, most of the calls targeted religious institutions, public officials, family members of public officials, and other prominent individuals. These included numerous Members of Congress and their family members, multiple cabinet-level executive branch officials, multiple heads of federal law enforcement agencies, a former President of the United States, and numerous elected and appointed state officials. Many of these calls involved threats to detonate explosives at the victim's home.

The defendant and other persons working with him were responsible for these swatting and threat calls. The defendant provided the names, addresses, and phone numbers for many of the targeted individuals, and one of his coconspirators, who speaks English with a foreign accent, used his voice to make all but one of the calls. Investigators have collected records (including audio recordings) for roughly 100 of those calls, which establish that each of the calls involved a false report of a

Defendant's Initials _NVA_                    16

homicide, kidnapping, bomb threat, or similar violent emergency at a victim premises. Only a few of those threats are described here.

On or about December 25, 2023, in a phone call to a government agency in the United States, the defendant's coconspirator falsely reported that he had placed explosives at a religious institution in Beaumont, Texas, Religious Institution Victim-4, resulting in the interruption of services at that religious institution.

On or about December 25, 2023, in a phone call to a government agency in the United States, the defendant and his coconspirator falsely reported a homicide and kidnapping at a neighboring residence to the home of Official Victim-11, a member of the U.S. Senate. The coconspirator threatened to kill the fictitious hostage if he were not paid a ransom.

On the morning of December 26, 2023, the defendant posted an image on one of his social media channels showing the abbreviated name of a federal law enforcement agency in bold block letters with a stick figure of a man on the left side of the image performing a sexual act against the letters, essentially indicating that the agency was being assaulted. On that same day, the defendant and his coconspirator falsely reported a homicide, kidnapping, and the presence of explosives at the home of a high-level executive of that federal law-enforcement agency, Official Victim-9. The coconspirator threatened to detonate the fictitious explosives if he were not paid a ransom.

Also on December 26, 2023, in a phone call to a government agency in the United States, the defendant and his coconspirator falsely reported a homicide,

Defendant's Initials _____        17

kidnapping, and the presence of explosives at the home of Official Victim-12, a senior U.S. executive branch official. The coconspirator threatened to detonate the fictitious explosives, kill the fictitious hostage, and rape and kill three fictitious children at the home if he were not paid a ransom.

On December 27, 2023, the defendant and his coconspirator called a government agency in the United States and falsely reported a homicide, kidnapping, and the presence of explosives at the home of Official Victim-13, a member of the U.S. Senate. The coconspirator threatened to "blow the house up" if he were not paid a ransom.

Defendant's Initials _____                18